**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

PATRICK LAVELL DAVIS PETITIONER
ADC #104208

V. NO. 5:13CV00129-SWW-JTR

WENDY KELLEY,[1] Director, RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge Susan Webber Wright. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of

[1]Wendy Kelley became Director of the Arkansas Department of Correction on January 13, 2015, and is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201-3325

## I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner, Patrick Lavell Davis ("Davis"), an Arkansas Department of Correction prisoner. *Doc. 2*. Before addressing Davis's habeas claims, the Court will review the procedural history of this case in state court.

On April 30, 2010, a Hot Spring County jury convicted Davis of: (1) two counts of breaking or entering; (2) one felony county of theft of property; and (3) two misdemeanor counts of theft of property. He was sentenced, as a habitual offender, to an aggregate sentence of 480 months of imprisonment. *Doc. 8-2*; *see Doc. 8-16 ("Trial Tr.")*.

On direct appeal, Davis argued that: (1) the trial court erred in failing to

"correct" certain remarks the prosecutor made in his opening statement; (2) the trial court should have quashed the entire jury panel because two members of the venire were victims of the thefts Davis was charged with committing; (3) the trial evidence was insufficient to prove his identity as the person who committed the offenses; and (4) the trial evidence was insufficient to prove that the property stolen in one of the thefts was worth $500 or more. *Doc. 8-3*.

On September 28, 2011, the Arkansas Court of Appeals rejected these arguments and affirmed Davis's convictions. *Davis v. State*, 2011 Ark. App. 561 ("*Davis I*"). On October 17, 2011, Davis petitioned the Arkansas Court of Appeals for rehearing, and filed a petition for review with the Arkansas Supreme Court. *Docs. 8-7 & 8-8.* Both petitions were denied. *Docs. 8-9 & 8-10*.

On January 25, 2012, Davis filed a *pro se* petition for post-conviction relief pursuant to Ark. R. Crim. P. 37.[2] *Doc. 8-12*. On March 6, 2012, the trial court

---

[2]In his Rule 37 petition, Davis argued that his constitutional rights were violated because: (1) his trial attorney failed to object to the prosecutor's opening statement; (2) two members of the venire panel were victims of the thefts at issue, and his trial attorney failed to object; (3) the trial court improperly communicated with the jury during its deliberations and the notes were not made a part of the record, and his attorney failed to object; (4) after stopping him for an alleged traffic violation, the police failed to develop sufficient evidence to charge him with any crimes, and he never received a traffic citation or arrest warrant; (5) the trial evidence was insufficient regarding the value of the stolen property, and his attorney did not object or adequately question the witnesses about the value or condition of the property; (6) he should have been considered eligible for release after serving 120 days due to his "low level offenses"; (7) his attorney failed to advise him of a five-year plea offer; (8) the prosecutor mistakenly introduced evidence of

conducted a hearing on the Rule 37 petition. Davis, his trial attorney, and Davis's sister all testified. *Doc. 8-17 ("Rule 37 Tr.")*. On March 13, 2012, the trial court entered an order denying Rule 37 relief. *Doc. 8-13*. Davis appealed.

On March 14, 2013, the Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief. *Davis v. State*, 2013 Ark. 118 ("*Davis II*").

On April 24, 2013, Davis initiated this habeas action. In his habeas papers, he argues: (1) his trial attorney was ineffective; (2) the way in which the trial court responded to a note from the jury, during its deliberations, was improper; (3) his right to due process was violated; (4) the prosecutor violated his Fifth Amendment privilege against self-incrimination by commenting on his anticipated testimony; (5) the evidence at trial was insufficient to support his convictions; and (6) the trial court illegally sentenced him as a habitual offender. *Docs. 2, 10 & 15*.

Respondent argues that all of Davis's claims are either procedurally defaulted or fail on the merits. *Doc. 8*.

## II. Standard of Review Governing § 2254 Habeas Claims

Where a state court has previously adjudicated a claim on the merits, a federal court may grant habeas relief for the same claim only where the state court's decision

---

another individual's prior convictions, and his attorney failed to object or explain the mistake to the jury; and (9) witnesses brought evidence into the courtroom, and his attorney failed to object or argue that the chain of custody had been broken.

"was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] 28 U.S.C. § 2254(d)(1)-(2). In addition, a state court's findings of fact are presumptively correct, and the habeas petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

## III. Discussion

Davis has asserted six separate habeas claims. For the reasons explained below, the Court concludes that some of those habeas claims have been procedurally defaulted, and the remaining claims are without merit. Accordingly, the Court recommends that all of Davis's habeas claims be dismissed, with prejudice.

### A. Davis's Ineffective Assistance of Counsel Claims

[3]A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite that of the United States Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of federal law when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407. A state court's application of clearly established federal law must be "objectively unreasonable," not merely "incorrect." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings," which "demands that state-court decisions be given the benefit of the doubt." *Id.*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court articulated the two-part standard for analyzing claims that a criminal defendant's counsel was constitutionally ineffective: whether the attorney's conduct "fell below an objective standard of reasonableness ... under prevailing professional norms," *and* whether the "professionally unreasonable" conduct of counsel "prejudiced the defense."[4] *Id.* at 687-88, 691-92. If a prisoner fails "to establish either *Strickland* prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

**1. Counsel's Alleged Failure to Communicate the Prosecutor's Five-Year Plea Offer**

Davis alleges that his trial attorney did not tell him that the prosecutor made a five-year plea offer, eight months before his trial. According to Davis, if he had known about it, he would have accepted the offer. *Doc. 2 at 5, 20-22; Doc. 10 at 3-6.* In support of this claim, Davis has submitted a letter, dated August 8, 2009, from the prosecutor to his trial attorney. In this letter, the prosecutor offers Davis "5 years [incarceration in the] department of correction on each charge, concurrent with restitution to be made to victims." *Doc. 2 at 23*.

---

[4]The defendant is prejudiced by the deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Respondent contends that: (1) this claim is procedurally defaulted because Davis has modified the factual basis for the claim as it was raised and argued in state court; and (2) alternatively, because the claim was reasonably adjudicated by the state courts, it is without merit.

A criminal defense lawyer has a "duty [under the Sixth Amendment] to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). However, to demonstrate that an attorney's failure to communicate a plea offer resulted in *prejudice*, as required by *Strickland*, the defendant must establish a reasonable probability that: (1) he would have accepted the plea offer had it been communicated to him; and (2) the trial court would have accepted the plea offer. *Id.* at 1410.

According to the transcript of Davis's state court proceedings, on October 27, 2009, the court conducted a pretrial hearing. *Davis, his attorney, and the prosecutor were all present for this hearing*. After Davis's attorney "request[ed] that the matter be set [for trial]," the trial court noted for the record that: (1) Davis *had rejected* a plea offer from the prosecutor; and (2) Davis was charged with three counts of breaking or entering *and* three counts of theft of property (a total of six separate felony offenses). *Trial Tr. at 60-61*.

On April 29, 2010, the day before Davis's jury trial was to begin, the prosecutor filed an Amended Information, charging him as a habitual offender, based on four or more prior felony convictions. *Id. at 1-3*.

The next day, shortly before his trial began, Davis told the court that, at the time of the October 27, 2009 hearing, he was *not* aware that a five-year plea offer was on the table.[5] *Id. at 73*. In response, the trial court stated the following:

> Whether [Davis] was or was not aware of [a five-year] offer that was made ..., the Court [would have] rejected that offer in that these charges pending before the Court consist of six counts. And also there is an amended charge of habitual offender. And the Court [would have] refused to accept the offer by the State. Therefore, that issue was moot, anyway.

*Id. at 73-74.*

At the end of Davis's trial, the jury convicted Davis on five separate counts and imposed the following sentences: (1) ten years for *each* of the two breaking or entering counts; (2) twenty years for the felony theft of property count; and (3) one year for each of the misdemeanor theft of property counts. *Id. at 315-16*. After

---

[5]This assertion by Davis is flatly contradicted by the transcript of the October 27, 2009 pretrial hearing, *which Davis personally attended*. During that hearing, the trial court explicitly stated his understanding that Davis had *rejected* a plea offer from the prosecution. Thus, the burden was on Davis to ask the judge what he was referring to, if he did not understand his reference to Davis having "rejected" a plea offer. Neither Davis nor his attorney asked the court to explain the plea offer Davis had rejected. This strongly suggests they either understood the court was referring to the five-year plea offer or they understood that Davis was *not* going to accept *any* plea offer.

merging the one-year misdemeanor sentences into the longer sentences, the trial court ruled that, because of Davis's "substantial amount of prior felonies," the sentences should run *consecutively*, for a total of forty years. *Id.* In refusing to release Davis pending his appeal, the court noted that it had known Davis "most of [his] life," and had sentenced him in that very courtroom for prior offenses. *Id. at 321; see id. at 340-55* (prior convictions).

In Davis's Rule 37 hearing, he argued, *inter alia*, that his attorney failed to tell him about the prosecutor's five-year plea offer. In connection with that allegation, Davis's attorney testified that: (1) He did not recall specifically informing Davis that the written August 2009 plea offer was for five years, but "may have said something to the effect of, they're wanting you to do a little time" (*Rule 37 Tr. at 61*); (2) He was "push[ing] up to the very end trying to get a probation offer [for Davis]" (*id. at 62*); and (3) He was not aware, until "right up there towards the end," that the trial court would not accept a five-year offer because Davis was a habitual offender (*id. at 61-62*). At the conclusion of the Rule 37 hearing, the trial judge stated: "[W]hen I was advised that the [plea] offer made to you was five years and that you were a habitual offender, I rejected that offer." *Id. at 91*.

In Davis's Rule 37 appeal, the Arkansas Supreme Court rejected Davis's contention that, under *Strickland*, his attorney was constitutionally ineffective for

failing to communicate the prosecutor's August 2009 plea offer:

> Counsel ... testified that the [five-year] offer was withdrawn because, when appellant's habitual-offender status became known, the court advised that the deal would not be accepted by the court. Even if appellant had been made aware of and accepted the deal with the prosecution, he would not have been allowed to enter a plea on the terms offered. The trial court's findings confirmed this fact as credible, and, based on those factual findings, it was not clearly erroneous for the court to conclude that appellant had not established prejudice from the alleged error in failing to communicate the plea offer.

*Davis II, supra* at 5-6, 8-9.

In this habeas action, Davis argues that, because he had not yet been charged as a habitual offender, at the time of the October 27, 2009 hearing, the trial court could not have used that as the basis for rejecting the five-year plea offer. Similarly, Davis argues that the Arkansas Supreme Court erred in rejecting his ineffective assistance of counsel claim because, on October 27, 2009, he had not been charged as a habitual offender, which deprived the trial judge of his stated legal basis for rejecting the five-year plea offer. Finally, Davis also points out that, at the October 27, 2009 hearing, the trial court did *not* explicitly reject the five-year offer, but only stated that *it had been rejected by Davis*.

All of these arguments *ignore* the trial court's unequivocal statement, during Davis's trial, that it would *not* have accepted a five-year plea offer on October 27,

2009, because "these charges pending before the Court consist of six counts."[6] *Trial Tr. at 73. In addition*, the court noted that, as of April 29, 2010, Davis had been charged as a "habitual offender," which was *another reason* the court would not now accept a five-year plea offer. *Id. at 73-74.* The Arkansas Supreme Court later relied on these facts to affirm the trial court's denial of Rule 37 relief. *Davis II, supra* at 8-9.

All of the foregoing facts are presumed to be correct, and Davis has not rebutted any of them. Accordingly, Davis has *not* shown a reasonable probability that, *if* he had agreed to the five-year plea offer, prior to the October 27, 2009 pretrial hearing, the trial court would have accepted it. Accordingly, Davis was not prejudiced by his trial counsel's alleged failure to communicate to him the five-year plea offer.

Similarly, the Arkansas Supreme Court's later rejection of Davis's ineffective-assistance claim, *due to lack of prejudice*, was not contrary to, or an unreasonable application of, the law set forth in *Strickland* and *Frye*,[7] nor was it based on an unreasonable determination of the facts. Thus, the Court concludes that this ineffective-assistance claim is without merit.

---

[6]During the April 30, 2010 hearing, the trial court explicitly stated that, even if Davis "was not aware of [a five-year] offer" at the time of the October 27, 2009 pretrial hearing, it would *not* have accepted such a plea offer because Davis had six separate felony counts pending against him on October 27, 2009.

[7]Although the Arkansas Supreme Court did not cite or rely on *Frye*, its decision is nonetheless entitled to § 2254 deference "so long as neither the reasoning nor the result" contradicts the governing precedent. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

**2. Counsel's Alleged Failure to Introduce Photos of Davis to Prove His Innocence**

Davis argues that his trial attorney was ineffective for failing to introduce photos taken the night of the crimes, which would have shown that Davis was wearing a white shirt and blue jeans. According to Davis, because the victims' descriptions of the clothing worn by the perpetrator did not match a white shirt and blue jeans, this would have "proven [his] innocence on the breaking and entering." *Doc. 2 at 22*.

Respondent correctly argues that this ineffective-assistance claim is procedurally defaulted because Davis did *not* make it in his Rule 37 post-conviction proceedings. *See Murphy v. King*, 652 F.3d 845, 848-50 (8th Cir. 2011) (before seeking federal habeas relief, petitioner must "fairly present" his claim to the state courts; federal habeas review of defaulted claims is "barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Court recognized that, in a narrow range of habeas cases, a petitioner can rely on his lack of counsel or ineffective assistance of counsel, which occurred at *the initial step of post–conviction review*, to establish "cause" to excuse his procedural

default of an ineffective-assistance-of-counsel claim. The Eighth Circuit has made it clear that, in § 2254 habeas claims arising in Arkansas, the *Martinez* exception only allows a district court to "to find 'cause,' thereby excusing a habeas petitioner's procedural default ... where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014); *see Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013).

Davis appears to have satisfied the second and third elements of *Dansby* because he lacked counsel during the state post-conviction proceeding, and it was the "initial" proceeding in which he could have raised this ineffective assistance of counsel claim. However, to invoke the *Martinez* exception, Davis must also satisfy the first element of *Dansby*, which requires him to establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one."[8] *Martinez*, 132 S. Ct. at 1318; *Dansby*, 766 F.3d at 834.

---

[8]In *Martinez*, the Court held that, for an ineffective-assistance-of-counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez*, 132 S. Ct. at 1318-19. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective assistance of counsel claim is procedurally defaulted and cannot be considered by a federal court in a § 2254 habeas action.

In Davis's direct appeal, the Arkansas Court of Appeals expressly determined that the evidence at trial was sufficient to prove that Davis was "the person who committed the offenses":

> [T]here was evidence that one of the victims made a 911 call in July 2009 reporting that a black man in a light-colored t-shirt broke into a car on the caller's driveway and was driving a dark-colored vehicle. A detective was dispatched and soon thereafter apprehended appellant in the vicinity—so close, in fact, that the 911 caller was able to see the officer stop appellant's vehicle atop a hill. Appellant and his car matched the description given by the caller, and appellant's car contained property described in detail by the original caller and members of two other victimized families living nearby as that which had been stolen from their three vehicles. No one else was in or near appellant's car when he was apprehended. We hold that this is substantial evidence of appellant's identity.

*Davis I, supra* at 2.

According to the trial transcript, one of the witnesses testified that she saw a tall black man wearing "a cream-colored shirt with designs on there and blue jeans." *Trial Tr. at 164*. Another witness, who made the 911 call, testified that the man she saw was wearing a "light-colored shirt." *Id. at 190, 197, 200*. Importantly, the officer who apprehended Davis testified that Davis was wearing blue jeans that were "a darker color," and a white shirt with "a design on the front." *Id. at 223-24*.

In cross-examining the eyewitnesses, Davis's attorney carefully questioned them about their inability to see the man's face or provide more details about his appearance. *Id. at 174-76, 184-87, 197-203*. In his closing argument, Davis's attorney

argued that the evidence was insufficient to identify Davis as the perpetrator. *Id. at 272-73.*

In light of the numerous witnesses who described the perpetrator as wearing a light-colored shirt and blue jeans, and the Arkansas Court of Appeals' determination that this testimony was sufficient to identify Davis as the perpetrator, Davis has not established a reasonable probability that, if his trial attorney had introduced a photo of him wearing a white shirt and blue jeans, the outcome of his criminal proceedings would have been different. Because this ineffective-assistance claim has no merit under *Strickland*, it is not a "substantial" claim that excuses Davis's procedural default under the *Martinez* exception.[9]

Accordingly, Davis has procedurally defaulted this ineffective-assistance-of-counsel claim, and the Court is barred from considering its merits.

**3. Counsel's Alleged Inadequate Cross-Examination of Witnesses to Establish the Value of the Stolen Property**

Davis argues that his trial attorney was ineffective for inadequately cross-examining one of the victims, Joe Thompson, regarding the value of his stolen

[9]Davis's conclusory assertion that the photos would have proven his "innocence" falls far short of the high evidentiary standard required by the United States Supreme Court to meet the demanding "fundamental miscarriage of justice" or "actual innocence" exception to the cause-prejudice requirement. *See Schlup v. Delo*, 513 U.S. 298, 324-31 (1995) (exception requires habeas petitioner to come forward with new reliable evidence not presented at trial and to show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him").

property (four pool cues and a cue bag). According to Davis, his attorney should have asked for a receipt or other supporting documentation to aid the jury in determining market value. *Doc. 2 at 22*; *Doc. 10 at 14.* Respondent contends that the state courts reasonably adjudicated this claim.

In Davis's direct appeal, the Arkansas Court of Appeals expressly determined that Thompson's valuation testimony was sufficient to support the felony theft of property conviction:

> At the time of the offense, theft of property was a Class C felony if the value of the property was less than $2500 but more than $500. Ark. Code Ann. § 5-36-103(b)(2)(A) (Repl. 2006). Value is the market value of the property at the time and place of the offense. Ark. Code Ann. § 5-36-101(12)(A)(i) (Repl. 2006). The original cost of property is one factor that may be considered by the jury in determining market value, as long as it is not too remote in time and relevance. *Reed v. State*, 353 Ark. 22, 109 S.W.3d 665 (2003). Here, there was testimony by one of the victims that four pool cues and a cue bag were taken from his truck. He stated that he was a retiree and that he shot pool every night at the Moose Lodge to practice for tournaments. He testified that two of the cues, worth $75 apiece, were "a couple of years old." He stated that the other two cues, worth $170 and $140, had been purchased within the last nine months and were "pretty close to brand new" at the time of the theft. He further testified that the cue bag, which was worth $235, was purchased at the same time as the more expensive cues. Given that the latter purchases were so recent, and considering that the Arkansas Supreme Court has held that there was substantial evidence from which a jury could have found the stolen property to be worth more than $35 where the owner of four stolen trophies described them as "new" and testified that they would cost around $10 each, *Williams v. State*, 252 Ark. 1289, 482 S.W.2d 810 (1972), we hold that this testimony is substantial evidence that the stolen property was worth more than $500.

*Davis I, supra* at 2-3 (footnote omitted); *see also Trial Tr. at 240-42.*

According to the trial transcript, Davis's attorney cross-examined Thompson about the age of the pool cues and the bag. *Trial Tr. at 243-44.* In moving for a directed verdict, Davis's attorney argued that the proof of value regarding Thompson's property was "insufficient" because two of the pool cues were two years old "and the market value today would be far less than that" due to "[s]imple wear and tear." *Id. at 253-54.* The trial court found these arguments to be "unpersuasive." *Id. at 255.*

In Davis's Rule 37 petition, he argued that the valuation evidence was insufficient and that his attorney failed to adequately question the witnesses about the market value or condition of the allegedly stolen property. *Doc. 8-12 at 3-4*. The trial court rejected those claims, stating: (1) substantial evidence was submitted regarding property value and "the jury made a determination concerning the felony range of a theft of property through the testimony of the property owners"; (2) "[i]t was very clear that the jury had sufficient facts as to market value"; (3) "no proof was presented" to support Davis's inadequate cross-examination argument; and (4) valuations of the pool cues were "fact issues" for the jury to determine. *Doc. 8-13 at 1-2*. The trial court also reasonably concluded that this ineffective-assistance claim

was without merit.[10]

Thus, Davis failed to establish a reasonable probability that, if counsel had asked additional or different questions on cross-examination about the value of Thompson's stolen property, the outcome of Davis's criminal proceedings would have been different. Under these circumstances, the state court's adjudication of this ineffective-assistance claim was not contrary to, or an unreasonable application of, the governing standard in *Strickland*, nor was it based on an unreasonable determination of the facts. Accordingly, this ineffective-assistance claim is without merit.

**4. Counsel's Alleged Failure to Adequately Challenge the Habitual Offender Charge**

Davis argues that his trial attorney: (1) "never even read" the "false, materially untrue" April 29, 2010 Amended Information; (2) allowed the Amended Information to be read to the jury without making an objection; and (3) could have "better challenged" the habitual offender charge contained in the Amended Information. *Doc. 2 at 14, 22, 30; Doc. 10 at 15.* Respondent contends that, because the state courts

[10]As previously noted, Davis's trial attorney undermined the victim's testimony on cross-examination, argued that the valuation evidence was inadequate, and preserved the issue for appeal. In Davis's direct appeal, the Arkansas Court of Appeals determined that the victim's testimony about the value of his property was sufficient, in and of itself, to support Davis's conviction for felony theft of property. Davis failed to produce any proof in his state court proceedings that the value of the stolen items differed from Thompson's testimony. Section 2254(d)'s deferential standard applies to adjudications of both trial and appellate state courts. *Worthington*, 631 F.3d at 497.

reasonably adjudicated this claim, it is without merit.[11]

According to the record, the prosecuting attorney filed an Amended Information on April 29, 2010, alleging that Davis was a habitual offender with ten prior felony convictions from Pike, Nevada, Hempstead and Howard Counties. *Trial Tr. at 9*. It is undisputed that *none* of the convictions cited in the Amended Information belonged to Davis.

On April 30, 2010, Davis's trial began. When the prosecutor realized that *none* of the ten felony convictions described in the Amended Information belonged to Davis, he immediately introduced into evidence *the six prior felony convictions, from Garland and Hot Spring Counties, that did belong to Davis*. *Id. at 288-89, 340-55*. The prosecutor, in the presence of the jury, also recited those six convictions "for the record." *Id. at 288.* Davis's attorney did not object to introduction of the six convictions because he had reviewed them and the six convictions were all "certified and legitimate." *Id*.

Later, in the sentencing phase of Davis's trial, the trial court *mistakenly* began to read to the jury the felony convictions listed in the Amended Information. The

[11]Based on the record, most of the facts cited by Davis to support this argument are either misstated or simply untrue.

prosecutor immediately interjected "those are not the right instructions."[12] *Id. at 289*. In a bench conference, the prosecutor stated that the ten convictions cited in the Amended Information were "not correct," but that Davis's six felony convictions which had already been admitted into evidence were "correct." *Id. at 289-90.*

Davis's attorney objected to the jury being instructed on the habitual offender allegation because Davis had not been convicted of any of the offenses alleged in the Amended Information. *Id. at 290*. The trial court overruled the objection on the ground that Davis's *six actual prior felony convictions* had already been admitted into evidence. *Id. at 290-91*. The court also granted, over Davis's attorney's objection, the prosecutor's request to conform the habitual offender charge in the Amended Information to the evidence in the record which established Davis's six prior felony convictions. *Id. at 291*. Consistent with that ruling, the trial court instructed the jury that Davis was a habitual offender with four or more prior felony convictions and specifically informed the jury of Davis's six prior felony convictions from Garland and Hot Spring Counties. *Id. at 292-94*. As indicated earlier, Davis's attorney had previously stipulated that those six prior felonies were "certified and legitimate," *i.e.*, he admitted Davis had been convicted of those six felonies. *Id. at 288.*

[12]The trial court read only three of the convictions from the Amended Information before the prosecutor interrupted. *Id. at 289.*

In his Rule 37 petition, Davis argued that he was denied due process when his attorney: (1) failed to object to the trial court mistakenly referencing the three felony convictions that did not belong to him; and (2) failed to explain this mistake to the jury in his closing argument. *Doc. 8-12 at 4*. The trial court rejected this claim, concluding: "[Davis] was charged as a habitual offender and he was a habitual offender in all aspects. The pen pack confirmed his status as a habitual offender. [Davis] was not prejudiced and he has failed to prove he has suffered any actual or specific prejudice by the finding of the jury." *Doc. 8-13 at 2*.

In denying Davis's Rule 37 appeal, the Arkansas Supreme Court also concluded that he had not established any prejudice arising from his trial attorney's performance in dealing with the habitual-offender evidence:

> Counsel opposed amendment of the information and introduction of the accurate habitual-offender evidence, but appellant provided no alternative basis on which counsel might have more successfully challenged the amendment of the information. It was obvious from appellant's testimony in the sentencing phase of the trial that he was familiar with the judgments that were introduced as evidence, and he provided no evidence that might have better challenged the evidence that was actually introduced at trial. Again, appellant established no prejudice in that he did not demonstrate that counsel might have successfully opposed ... the introduction of the habitual-offender evidence.

*Davis II*, *supra* at 6-7.

The Arkansas Supreme Court reasonably concluded that Davis was not

prejudiced by the way in which his trial attorney dealt with the habitual-offender charge and the six prior felony convictions upon which it was based. Contrary to Davis's argument, his attorney made two objections: one to the habitual offender charge and one to the evidence of the felony convictions that supported it. The trial court overruled both of those objections, after explaining why neither had any merit.

It is undisputed that Davis was a habitual offender and that the only felony convictions introduced into evidence were the six which properly belonged to him. While the trial did read three convictions from the Amended Information that did *not* belong to Davis, the prosecutor interrupted the court and made a clear statement, in the presence of the jury, that those three convictions were erroneous and should not be considered by the jury. The trial court then properly instructed the jury to consider only Davis's six prior convictions, which had earlier been admitted into evidence. Davis's attorney stipulated to the validity of those six prior felony convictions, and Davis has never presented any alternative facts or arguments suggesting how his attorney could have made a successful challenge to those convictions.

Thus, the Arkansas Supreme Court's adjudication of this ineffective-assistance claim was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record. Accordingly, this ineffective-assistance claim is without merit.

**5. Counsel's Alleged Failure to Object to the Way the Court Responded to a Note from the Jury**

Finally, Davis argues that his trial attorney was "clearly ineffective" for failing to object to the way the court responded to a note from the jury while it was deliberating his guilt or innocence. According to Davis, this violated Ark. Code Ann. § 16-89-125(e).[13] *Doc. 2 at 7, 22, 26; Doc. 10 at 7*.

About an hour after the jury began deliberating Davis's guilt or innocence, it sent the judge the following note: "Could he [Davis] be guilty of theft of property without being guilty of breaking or entering to obtain that property?" *Trial Tr. at 279-80*. In an in-chambers hearing, *with Davis, Davis's attorney and the prosecutor all present*, the court read the jury's note aloud. After discussing it with counsel, the judge told the bailiff to tell the jury that the court "cannot legally answer the question." *Id.* According to Davis, the judge also wrote his response to that question on the note he received from the jury. *Doc. 2, at 7*.

---

[13]In pertinent part, this statute provides the following:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

Ark. Code Ann. § 16-89-125(e). Noncompliance with this statutory provision "gives rise to a presumption of prejudice, and the State bears the burden of overcoming that presumption." *Bledsoe v. State*, 39 S.W.3d 760, 765 (Ark. 2001).

Although the note was not made a part of the record, the in-chambers hearing was transcribed and is part of the official record. *Trial Tr. at 279-81*. Davis *admits* that he and his attorney were present for the in-chambers hearing.

Later, during the sentencing phase of Davis's trial, the bailiff delivered another note from the jury. After an in-chambers hearing, with Davis, his attorney, and the prosecutor all present, the court responded in writing to the jury's question and told the bailiff to deliver the note to the jury. *Id. at 313-14*. The jury was then called back into the courtroom, where the court read into the record the jury's question and the court's response, and made the jury's note and the court's written response an exhibit to the record. *Id. at 314-15, 360-61*.

In his Rule 37 petition, Davis argued that his trial attorney was ineffective for "allowing unrecorded communication with a jury that was in the midst of reaching a verdict of guilt and during sentencing." He also argued that this "raised [a] presumption of prejudice." *Doc. 8-12 at 2-3*. The trial court ruled that it "did not hear any testimony from [Davis] on that issue and the argument has no merit." *Doc. 8-13 at 2*.

In Davis's appeal, the Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief. In doing so, the Court held that there was "sufficient compliance" with § 16-89-125(e) and Davis had not demonstrated that he was prejudiced by the

trial court's handling of the jury's question. In reaching this decision, the Court only discussed the jury's note submitted during the sentencing phase of Davis's trial. *Davis II, supra* at 7-8.

Davis now argues that his attorney was ineffective for failing to object to the way the court responded to the jury's first note, which was submitted *during the guilt or innocence phase of his trial*. It bears repeating that the trial court's allegedly objectionable response to the jury's note stated only that: "[the court] cannot legally answer the [jury's] question." Davis has admitted that, after the trial court stated its proposed response to the jury's first question, the judge wrote that response on the jury's note and presumably gave it to the bailiff to return to the jury. While the jury's first note and the judge's written response were not made a part of the record, there is *nothing* in the record to suggest that anything was communicated to the jury, in response to its question, that was improper. Thus, it is pure speculation for Davis to argue that the bailiff "*might* not [have] hear[d] correctly everything [the judge said]" (emphasis added), and "*possibly* gave a bias[ed] response" (emphasis added) to the jury. *Doc. 2 at 26*.

Davis's argument also fails to mention that the trial court conducted an in-chambers hearing to address the jury's question, with Davis, his attorney, and the prosecutor present, along with a court reporter who transcribed the entire proceeding.

No one made any objection to the way the court responded to the jury's note, or suggested that the note be read and responded to in the presence of the jury, or be marked as an exhibit so it could be made part of the record.

Finally, Davis contends that, because the trial court did not comply with Ark. Code Ann. § 16-89-125(e), in its response to the jury's first question, he is entitled to a presumption of prejudice, which the state has failed to rebut.

Both the Arkansas Supreme Court and the Arkansas Court of Appeals have held that strict compliance with § 16-89-125(e) may be waived where the record reflects the substance of the trial court's written communication with the jury, the defendant agreed to the language in the communication, and the court never had any direct contact with the jury during deliberation. *Anderson v. State*, 108 S.W.3d 592, 598 (Ark. 2003) (state rebutted the presumption of prejudice where the trial court responded in writing to a written question from the jury with an answer that both the state and defendant agreed was the correct response, the substance of the court's communication was reflected in the record, defendant never objected to that substance, and the court never had any contact with the jury during deliberations); *Clark v. State*, 223 S.W.3d 66, 69-71 (Ark. Ct. App. 2006) (no prejudice where the answers to the jury's questions were reduced to writing with the agreement of defense counsel, defendant did not contend there was anything improper about the substance

of the court's response, the questions and answers were made part of the record, there was no direct communication between the judge and the jury, and there was no evidence of any communication between the bailiff and the jury when the bailiff delivered the note).

In *Clark*, the Court explicitly rejected an argument, virtually identical to Davis's, that the defendant was prejudiced because there was no record of how the bailiff communicated with the jury regarding the judge's response to its question. Because nothing in the record reflected any improper communications between the bailiff and the jury, the Court concluded that the state was not required to rebut "a speculative scenario with no basis in the record." *Clark*, 223 S.W.3d at 70-71.

Here, the record reflects that, in the presence of Davis, his attorney and the prosecutor, the trial judge read the jury's note aloud, consulted with the attorneys regarding how to respond, stated what the court's response would be, wrote his response to the jury's question on the jury's note, and instructed the bailiff to convey the message to the jury. The court's response advised the jury only that it "cannot legally answer the [jury's] question." Davis presented no evidence that the bailiff did anything more than provide the jury with the court's response to its question. As the Court made clear in *Clark*, § 16-89-125(e) does not require the state to rebut a "speculative scenario with no basis in the record." *Id.*

Thus, Davis has not demonstrated a reasonable probability that, if his trial counsel had objected and successfully gotten the judge to respond to the jury's first question in open court, the verdict would have been different. Thus, the state court's adjudication of this ineffective-assistance claim was not contrary to, or an unreasonable application of, the governing standard set forth in *Strickland*, nor was it based on an unreasonable determination of the facts. Accordingly, this ineffective-assistance claim is without merit.

**B. <u>Trial Court's Alleged Failure to Comply with Ark. Code Ann. § 16-89-125(e) in Responding to the Jury's First Note</u>**

Davis also asserts a *substantive claim* that the way in which the trial court responded to the jury's first note, during its deliberations on Davis's guilt or innocence, constituted a clear violation of Ark. Code Ann. § 16-89-125(e), and justified a new trial. *Doc. 2 at 6-7, 26; Doc. 10 at 7-8, 11*. Respondent contends this claim challenges only the final resolution of an issue of state law, which is not cognizable in a § 2254 habeas action.

Federal habeas corpus relief is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). As explained earlier, this Court is limited, under § 2254(d), to deciding whether a state-court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." Although Davis cites, without discussion, one Seventh Circuit Court

of Appeals case which is not on point,[14] all of his substantive legal arguments are based on the trial court's alleged violation of Ark. Code Ann. § 16-89-125(e).

Furthermore, even if Davis's arguments were somehow construed to raise a federal constitutional claim, it would fail because: (1) Davis clearly was *not* prejudiced by the trial court's response to the jury's first note, (*see Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992) (a "clear indication of lack of prejudice" may overcome the presumption of prejudice created by "[c]ommunication between judge and jury in the absence of and without notice to the defendant" in violation of the Fifth and Sixth Amendment)); and (2) there was *nothing improper* about the way the court responded to that note.

Accordingly, the Court concludes that this claim is not cognizable in a § 2254 action, and, even if it could be construed to allege a substantive Fifth or Sixth Amendment claim, it is without merit because Davis was in no way prejudiced by the trial court's response to the jury's first note.

**C. <u>Davis's Fourteenth Amendment Due Process Claims</u>**

**1. Alleged Error in the Jury Instructions Given During the Sentencing Phase of Davis's Trial**

Davis argues that, *during the sentencing phase of his trial*, the court violated his

---

[14] *United States v. Neff*, 10 F.3d 1321 (7th Cir. 1993). *Doc. 10, at 8.*

due process rights by instructing the jury on the length of time he would be required to serve in the ADC, before he would become eligible for transfer to the Department of Community Corrections and then paroled from prison. According to Davis, communicating such information to the jury is "alien to [a] judicial proceeding since it is handled entirely by another department of government, the executive." *Doc. 2 at 8, 27*; *see Trial Tr. at 291-92*.

Respondent contends that: (1) this claim is procedurally defaulted because Davis never raised it in state court; and (2) to excuse his default, Davis cannot rely on the failure of his trial attorney to raise and preserve this claim, because any such ineffective-assistance claim is itself procedurally defaulted.[15]

In Davis's direct appeal and in his Rule 37 proceedings, he never raised any due process claims based on the trial court's instructions to the jury, during the sentencing phase of his trial, about his transfer eligibility date, or a claim that his trial attorney was ineffective for failing to object to those instructions. Thus, both claims are procedurally defaulted.

Finally, Davis's failure to raise such an ineffective-assistance-of -counsel claim in his Rule 37 proceedings does not constitute "cause" to excuse default under the

[15]Davis alleges that his new attorney, who handled his direct appeal, could not raise this claim because his trial attorney had not objected and preserved the error for appeal. *Doc. 2 at 8.*

*Martinez* exception because any such claim clearly is *not* "substantial." Counsel is not ineffective for failing to pursue a meritless claim. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Ark. Code Ann. § 16-97-103(a) explicitly permits a court, during the sentencing phase of a trial, to instruct the jury about the "law applicable to parole, meritorious good time, or transfer." In addition, the Arkansas Supreme Court has expressly held that this statute does not violate the doctrine of separation of powers or usurp the executive department's power and authority to decide when an individual defendant should be released. *Teague v. State*, 946 S.W.2d 670, 672-73 (Ark. 1997). Thus, any effort by Davis's trial attorney to object to this instruction clearly would have been rejected.

Accordingly, because Davis has procedurally defaulted this due process claim, the Court is barred from considering its merits.

**2. Trial Court's Alleged Error in Denying Davis's Motion to Quash the Venire**

Davis argues that his right to due process was violated because two victims of his crimes were members of the venire panel or "jury pool" from which his jury panel was called. He argues that the circumstances were "so fraught with [the] possibility of bias" that he was deprived of his right to an impartial jury. *Doc. 2 at 8, 27; Doc. 10 at 8.*

Respondent contends that: (1) this claim is procedurally defaulted because

Davis raised it in state court as a Sixth Amendment claim, rather than a due process claim; and (2) alternatively, the claim was reasonably adjudicated by the state courts.

According to the transcript of Davis's trial, his attorney objected, before jury selection began, because the jury pool contained two of the prosecution's witnesses, Danny Hedges and Treshawna Bailey, both of whom were victims of the crimes for which Davis was charged. *Trial Tr. at 64-65*. The prosecutor responded that Hedges and Bailey were *not* on the jury panel *for that day* and, to his knowledge, the only time the entire jury pool had been together was for jury orientation. Thus, the prosecutor argued there was no "possibility of any tainting whatsoever." *Id. at 65*.

The trial court brought Hedges and Bailey into chambers for questioning. Hedges provided the following sworn testimony: (1) He had not discussed, with any members of the jury pool, "an incident whereupon [he was] involved as a victim of a crime," and had never mentioned Davis to any member of the jury pool; (2) He had not served on any previous juries selected from the jury pool; (3) His only contact with the pool was during orientation and "right now"; and (4) He knew only two other members of the jury pool, one of whom had been a co-worker, but, "to [his] knowledge," he had not discussed "this matter" with anyone in the jury pool. *Id. at 66-68, 77*.

Bailey testified similarly to Hedges. She stated that she had been to jury

orientation and had appeared to serve two other times, but had not been selected as a juror. She stated that she had not talked to any other members of the jury pool about her being the victim of a crime involving Davis. She said she felt "absolutely comfortable" that no one on the panel had knowledge of her being a victim of the crimes that were about to be tried. Finally, she stated that, although she was related to Davis, she was not related to, and did not know, anyone else on the jury panel. *Id. at 75-77*.

After admonishing Hedges and Bailey not to speak to any members of the jury pool, the trial court denied Davis's motion to quash the venire panel. He also ruled that: (1) Hedges and Bailey would *not* be allowed to serve on the *jury panel for that day*; (2) they had "in no way tainted this [venire] panel"; and (3) Davis's right to a "fair and proper decision" had not been jeopardized by Hedges and Bailey being members of the venire. *Id. at 77-79.*

During voir dire, Hedges and Bailey were identified as witnesses. *Id. at 113*. The trial court instructed the jury not to discuss the case with anyone and not to talk to any of the "attorneys, parties, or witnesses about anything." *Id. at 135, 146-47.* Both Hedges and Bailey later testified. *Id. at 188-204, 236-39*.

On direct appeal, the Arkansas Court of Appeals rejected Davis's argument that the trial court erred in failing to quash the venire panel:

> Essentially, he argues that, even though the trial judge ascertained that these veniremen had not served on any trial during the term and had not discussed their experience with any other members of the venire, including the jurors who ultimately served on this case, the panel was irredeemably tainted because an appearance of impropriety remained. This is not the law. The trial judge's duty is to protect the jury from contamination, and the question for us to decide is whether his actions constituted an abuse of discretion. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002). Bias will not be presumed, nor will we presume that a jury was incapable of following the trial court's instructions. *Id.* On this record, we conclude that the trial court's actions were proper and sufficient.

*Davis I, supra* at 4.

In his Rule 37 petition, Davis argued that he was denied a fair trial and that his attorney was ineffective for failing to object to the venire panel because Hedges and Bailey were members of it and they were also witnesses for the prosecution in his trial. *Doc. 8-12 at 2*. In affirming the trial court's denial of Rule 37 relief, the Arkansas Supreme Court noted that Davis failed "to offer any evidence of bias by a juror." *Davis II, supra* at 7. The Court went on to hold that, apart from his ineffective-assistance claim, Davis's allegations about the jury panel were not sufficient to support "independent claims of fundamental error" by the trial court because he had failed to demonstrate prejudice:

> Where the merits of a claim have been previously addressed and adjudicated, the conclusion of the court in one opinion becomes the law of the case on subsequent proceedings on the same cause, and the matter is res judicata. *Bliss v. Hobbs*, 2012 Ark. 315 (per curiam). The court of appeals addressed the issue of whether the jury panel had been tainted

> and found no error in the court's refusing to quash the entire jury panel. *Davis*, 2011 Ark. App. 561, at 34. As noted, appellant did not offer any additional evidence of bias to support a claim of prejudice.

*Id.* at 9-10 & n.1.

This Court is bound by the state courts' presumptively correct factual findings that Hedges and Bailey had not discussed their experiences with any members of the venire, or otherwise tainted the jury panel from which Davis's jury was selected. Both the Arkansas Court of Appeals and the Arkansas Supreme Court accepted these factual findings by the trial court. *See Williams v. Norris*, 612 F.3d 941, 954 (8th Cir. 2010) ("Whether a juror is biased against the defendant is a question of fact, and we will defer to the state court's finding 'if it is fairly supported by the record.'").

Finally, Davis has not identified any United States Supreme Court case requiring that bias be imputed to the entire venire panel, under circumstances similar to those involved in this case. Similarly, he has not pointed to any evidence of bias resulting from Hedges and Bailey having been members only of the venire, but *not* members of the jury panel from which Davis's jury was selected.

Thus, Davis has not demonstrated that the state courts' adjudication of this claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the record. Accordingly, this due process claim is without merit.

### 3. Prosecution's Alleged Failure to Arrest or Formally Charge Davis

Finally, Davis argues that he was denied due process because he was never: (1) arrested; (2) served with an arrest warrant; or (3) "formally charged." *Doc. 2 at 8, 27-28; Doc. 10 at 9*. Respondent contends that: (1) this claim is procedurally defaulted because Davis should have raised it at trial and on direct appeal; and (2) Davis cannot base an ineffective assistance of counsel claim on his trial attorney's failure to challenge the charging documents because any such claim is itself procedurally defaulted.

Davis did not properly raise this due process claim or any ineffective-assistance-of-counsel claim arising from his trial attorney's failure to assert it in any of his state court proceedings. Thus, both of these claims are now procedurally defaulted.

Because this ineffective-of-assistance-of-counsel claim clearly is not "substantial," Davis's failure to raise it in his Rule 37 petition cannot constitute "cause" to excuse default under *Martinez*. The Arkansas Supreme Court has held that any irregularities in an arrest or pretrial detention, or deficiencies in a felony information, do not invalidate a subsequent conviction. *Smith v. Hobbs*, 2012 Ark. 18 at 3. *Accord United States v. Crews*, 445 U.S. 463, 474 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Thus, even if Davis's trial counsel had challenged the alleged

procedural deficiencies surrounding the way charges were brought against Davis, those arguments would have been summarily rejected by the trial court and affirmed on appeal.

Furthermore, the record in this case in no way supports Davis's claim. According to the record: (1) Davis was arrested at "0114" on July 8, 2009, and released on bond the same day, *Trial Tr. at 15* (bail bond); (2) Det. Brian Johnson executed a probable cause affidavit on July 9, 2009, setting forth the underlying facts and evidence, *id. at 10-12;* (3) Bench Warrant No. 2009-261 was issued in Davis's criminal case on July 16, 2009, and was "served ... ret[urned] & filed" on August 3, 2009, *id. at 13*; (4) a "Notice of Arraignment" was served on Davis on August 3, 2009, notifying him that he had been charged with breaking or entering and theft of property, *id. at 14*; (5) at a hearing on October 27, 2009, at which Davis was present, the trial court stated that Davis was charged with three counts of breaking and entering and three counts of theft of property, *id. at 60-61*; and (6) an Amended Information was filed on April 29, 2010, charging Davis with breaking or entering, theft of property, and being a habitual offender, *id. at 7-9*.[16]

During his Rule 37 hearing, Davis's trial counsel testified that he "could very well" have accepted service of the arrest warrant on Davis's behalf at the police

[16]The record does not contain the original information.

department because that "happens routinely." *Rule 37 Tr. at 75-76*. He also testified that Davis was "formally charged." When Davis stated that he never saw an information, his trial counsel responded: "You saw a copy of your case file, which contains the warrant, bench warrant and your felony information." *Id. at 76*.

Accordingly, because Davis has procedurally defaulted this claim, the Court is barred from considering its merits. Furthermore, even if the claim was not procedurally defaulted, the constitutional underpinnings of the claim find no support whatsoever from the undisputed facts in the record.

**D. Alleged Violation of Davis's Privilege Against Self-Incrimination Claim**

The prosecutor, in his opening statement, said: "Now, we anticipate the defense will say, 'Wasn't me. Wasn't Mr. Davis.' There is a term that we use for that and it's called the 'Soddi' defense, S-O-D-D-I, 'some other dude did it.'" *Trial Tr. at 156*. Davis argues that these remarks suggested he was going to testify, drawing attention to his decision not to do so, and violating his Fifth Amendment privilege against self-incrimination. *Doc. 2 at 10; Doc. 10 at 10*. Respondent contends that this claim was reasonably adjudicated by the state courts.

In Davis's direct appeal, the Arkansas Court of Appeals held that, in the absence of an objection, the trial court was not required to intervene on its own motion to correct this alleged error by the prosecutor. *Davis I, supra* at 5. Nevertheless, the

Court proceeded to analyze the merits of the underlying Fifth Amendment claim:

> When it is alleged that a prosecutor has made an improper comment on a defendant's failure to testify, we first determine whether the statement itself is in fact a comment, overt or veiled, on the defendant's failure to testify. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000). Should we determine that the prosecutor did refer to the defendant's choice not to testify, we would then determine whether it can be shown beyond a reasonable doubt that the error did not influence the verdict. ...
>
> We think that, although the prosecutor was edging toward territory that is best avoided, there is a distinct difference between a statement anticipating that the defense will rely on failure to prove identity and a statement anticipating that the defendant will actually testify that he was not the perpetrator. Here, we cannot say that the statement constituted an error so egregious and prejudicial as to require the trial judge to intervene on his own motion.

*Id.* at 5-6.

In *Griffin v. California*, 380 U.S. 609, 615 (1965), the Court held that the Fifth Amendment forbids *direct comments* by a prosecutor on a defendant’s failure to testify. However, the Court has “never clearly established that a prosecutor may not comment on the evidence in a way that *indirectly* refers to the defendant’s silence.” *Edwards v. Roper*, 688 F.3d 449, 460 (8th Cir. 2012), *cert. denied*, 134 S. Ct. 58 (2013). Furthermore, even if a *Griffin* violation is established, the error does not warrant habeas relief unless it had a “substantial and injurious effect or influence in determining the jury’s verdict.” *Robinson v. Crist*, 278 F.3d 862, 866 (8th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The Arkansas Court of Appeals' adjudication of Davis's Fifth Amendment claim was not contrary to the governing federal law.[17] Moreover, in applying the law to the facts of Davis's case, the Court of Appeals reasonably concluded that: (1) the prosecutor's comment was simply a reference to Davis's anticipated *defense*, rather than an attempt to draw attention to his anticipated testimony or lack of testimony;[18] and (2) Davis had not made a sufficient showing of prejudice from the comment. *See Edwards*, 688 F.3d at 459-60 (prosecutor's reference to defendant's failure to express remorse was an "indirect comment" on his silence, which was not a violation of clearly established federal law under § 2254(d)); *Burton v. Dormire,* 295 F.3d 839, 848 (8th Cir. 2002) (prosecutor's comment drawing the jury's attention to the absence of alibi witnesses was "fair comment on the weakness of the defense and was not a violation of [the defendant's] right to remain silent"); *Sidebottom v. Delo*, 46 F.3d

[17]The Court relied on Arkansas cases which, in turn, relied on *Griffin v. California*. *Davis I, supra* at 5-6 (citing *Jones*, 10 S.W.3d at 456, citing *Gates v. State*, 2 S.W.3d 40, 44-45 (Ark. 1999), citing *Griffin*)).

[18]The prosecutor accurately characterized the nature of Davis's defense, as presented through: (1) eyewitness testimony that they were unable to positively identify the perpetrator or determine if another person was present; (2) testimony that Davis told officers "somebody else had been with him," that one officer initially thought someone ran away from Davis's vehicle into the woods, and that the officers gave some credence to Davis's statement by searching the area; (3) testimony from the officers that they did not interview Davis or try to obtain fingerprints from the vehicle or the stolen property; and (4) defense counsel's closing argument, which emphasized this testimony to the jury. *See Trial Tr. at 174-76, 185-86, 198-203, 211-14, 225-29, 231-34, 271-74.*

744, 759 (8th Cir. 1995) (prosecutor may comment on the defense's failure to present evidence to contradict the state's case "unless the defendant alone had the information to do so").

Accordingly, Davis's Fifth Amendment claim is without merit.

**E. Davis's Sufficiency of the Evidence Claim**

Davis argues that the state failed to present sufficient evidence of his guilt on any of the breaking and entering charges because no witnesses positively identified him, and the police failed to interview Davis or obtain any fingerprints or other evidence to connect him to the crimes. Regarding the felony theft of property conviction, Davis argues that the state failed to present sufficient evidence of the value of the property, and the jury was unable to arrive at an accurate determination of market value without engaging in speculation and conjecture.[19] *Doc. 2 at 12; Doc. 10 at 12-15*. Respondent contends that these claims were reasonably adjudicated in Davis's direct appeal.

Evidence is constitutionally sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

[19]He does not challenge the sufficiency of the evidence regarding his misdemeanor theft convictions.

of fact could have found the essential elements of the crime beyond a reasonable doubt."[20] *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In addition, where the state courts have determined that the trial evidence is sufficient, that decision may not be overturned on federal habeas review simply because the federal court disagrees with the state court. *Id.* at 2062. Instead, as explained, the federal court must afford "considerable deference" to the state-court determination, and may grant habeas relief only if the decision was "objectively unreasonable." *Id.* at 2062, 2065.

As indicated earlier, in Davis's direct appeal, the Arkansas Court of Appeals expressly found that there was "substantial evidence" to "prove his identity as the person who committed the offenses." *Davis I*, *supra* at 2. The Court's conclusion was based on: (1) the 911 caller's report of a man breaking into a car in her driveway; (2) the apprehension of Davis shortly thereafter in the vicinity; (3) evidence that Davis and his vehicle matched the descriptions given by the 911 caller; (4) the discovery of property in Davis's vehicle described by three victims as being stolen from their vehicles; and (5) the fact that no one else was in or near Davis's car. *Id.*

---

[20]Circumstantial evidence is "just as probative as any other type of evidence." *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011); *see Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

The Arkansas Court of Appeals also expressly found that there was "substantial evidence" to prove "that the stolen property [the pool cues and bag] was worth more than $500," based on the owner's testimony regarding the value and the fact that the purchases were "so recent." *Id.* at 2-3.

The Arkansas Court of Appeals' decision was not contrary to the legal standard articulated in *Jackson*. *See Dansby*, 766 F.3d at 817-18 (Arkansas courts' standard for assessing sufficiency of the trial evidence is "consistent with *Jackson*"). Moreover, the Court's determination that the trial evidence was sufficient was not objectively unreasonable. Viewing the evidence in the light most favorable to the prosecution, a rational juror could find that Davis was the perpetrator of the crimes, and that the value of the property at issue exceeded $500.

Accordingly, Davis's sufficiency-of-the-evidence claim is without merit.

**F. <u>Davis's Illegal Sentence Claims</u>**

**1. Reliance on "False" Prior Convictions**

Davis argues that his sentence as a habitual offender is illegal and violates due process because the state presented ten "false, materially untrue" convictions, leading the jury to believe that it was sentencing the man to whom those convictions belonged. *Doc. 2 at 14-15, 30-34; Doc. 10 at 15*. Respondent contends that: (1) this claim is procedurally defaulted because Davis raised it in state court as an ineffective-sentence

claim, rather than a challenge to the legality of his sentence; and (2) alternatively, the claim is without merit.

A sentence violates due process if it is based on "extensively and materially false" evidence that the defendant had no opportunity to cure. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). As previously discussed, during the sentencing phase of Davis's trial, the trial court mistakenly referred to three felony convictions that were *not* attributable to Davis. The prosecutor immediately brought this mistake to the trial court's attention, and it proceeded to instruct the jury on *only the six prior felony convictions introduced into evidence as being properly attributable to Davis*. Nothing in the record suggests that the jury based its sentencing decision on the three incorrect convictions that were not attributable to Davis. Furthermore, the April 29, 2010 Amended Information that contained those erroneous convictions was never entered into evidence or fully read to the jury. Because Davis has not demonstrated that his sentence as a habitual offender was based on false or inaccurate evidence, his due process claim is without merit.

**2. Trial Court's Allowance of Late Amendment**

Finally, Davis argues that he was denied due process when the trial court improperly allowed the prosecutor, in the sentencing phase of Davis's trial, to amend the "false" habitual offender allegations in the April 29, 2010 Amended Information

and substitute Davis's six prior convictions. Davis argues that he was "ambushed" when the trial court and the state "discarded every allegation in Count 7 [the habitual offender allegation in the April 29, 2010 Amended Information] and then, in effect, completely rewrote Count 7 without providing adequate notice or affording due process to [him]." *Doc. 2 at 14, 30-34; Doc. 15 at 4-8*. Respondent contends that this claim is procedurally defaulted.

Although Davis's trial attorney objected to the "late" amendment, Davis's direct-appeal attorney did not argue that the trial court erred in allowing the prosecutor to amend the charging information in the sentencing phase of Davis's trial. Similarly, in Davis's Rule 37 petition, he did not argue that his appellate attorney was ineffective for failing to raise this claim in his direct appeal. Thus, both the claim of trial court error and the ineffective-assistance-of-appellate-counsel claim are procedurally defaulted. The Eighth Circuit has held that the equitable exception announced in *Martinez* does not excuse the procedural default of claims of trial error, or claims of ineffective assistance of *appellate counsel*. *Dansby*, 766 F.3d at 833-34.

Accordingly, this Court is procedurally barred from considering the merits of Davis's due process claims arising from his allegedly "illegal sentence."

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 2*, be DENIED, and that this case be DISMISSED in its entirety, with prejudice.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED, as Davis has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED THIS 9th DAY OF March, 2015.

J. Thomas Ray

UNITED STATES MAGISTRATE JUDGE